IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CORPORATE LODGING CONSULTANTS, INC., <br> **Plaintiff** <br><br> v. <br><br> DEANGELO CONTRACTING SERVICES, LLC, <br> **Defendant** | No. 3:23cv295 <br><br> (Judge Munley) |

## MEMORANDUM

Before the court for disposition is Defendant DeAngelo Contracting Services' motion to dismiss Plaintiff Corporate Lodging Consultants, Inc.'s complaint. The parties have briefed their respective positions, and the matter is ripe for disposition.

**Background**[1]

Plaintiff Corporate Lodging Consultants, Inc. is in the business of locating and securing overnight lodging facilities for its customers. (Doc. 1, Compl. ¶ 2). Plaintiff "provides comprehensive lodging solutions for its customers' business

---

[1] These brief background facts are derived from plaintiff's complaint. At this stage of the proceedings, the court must accept all factual allegations in the complaint as true. Phillips v. Cnty. of Allegheny, 515 F. 3d 224, 233 (3d Cir. 2008). The court makes no determination, however, as to the ultimate veracity of these assertions.

travel programs, including by unlocking access to negotiated lodging rates at hotels, providing travel cost control services, streamlining travel invoicing and payments, and providing related support." (Id. ¶ 3).

Plaintiff and DeAngelo Brothers, Inc. ("DBI") entered into a System Lodging Agreement with a start date of November 1, 2002 and an addendum added on September 9, 2011 and a second addendum entered into on March 23, 2017. (Id. at ¶ 12).[2] The agreement required plaintiff to provide DBI with its services such as locating and securing overnight lodging facilities for use by defendant. (Id. ¶ 14).

For nearly twenty years, plaintiff invoiced DBI for its services and the invoices were paid by DBI. (Id. ¶¶ 18, 20). However, DBI has not paid the invoices submitted by plaintiff between August 2021 and January 2022. (Id. ¶ 21). Accordingly, per the complaint, DBI owes plaintiff over $800,000. (Id. ¶ 23). Defendant DeAngelo Contracting Services LLC ("defendant") is a successor to DeAngelo Brothers and continues to operate in effectively the same manner as DBI according to the complaint. (Id. ¶¶ 24-33).

---

[2] The agreement was signed by DeAngelo Brothers, Inc., in 2002. In 2011, an addendum was signed by DeAngelo Brothers, Inc. and in 2017 a second addendum was signed by DeAngelo Brothers, LLC. (Doc. 1-1, Compl. Ex. 1). For purposes of clarity, the court will use the abbreviation "DBI" to refer to both DeAngelo Brothers, Inc. and DeAngelo Brothers, LLC.

On February 28, 2022, plaintiff filed a civil action against DBI in the United States District Court for the Eastern District of Pennsylvania alleging breach of the subject agreement. (Doc. 1, ¶ 47). The complaint was never answered and the plaintiff obtained a default judgment in the total amount of $897,988.00 on May 17, 2022. (Id. ¶ 51).

Plaintiff subsequently filed the instant action against defendant to recover the money owed by DBI. The complaint contains two counts, breach of contract and unjust enrichment. (Id. ¶¶ 52-65). Plaintiff seeks damages in the amount of $897,988.00, plus pre-judgment and post-judgment interest, costs, and attorney's fees as provided in the System Lodging Agreement. (Id. Ad damnum clause). Defendant has filed a motion to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

**Jurisdiction**

The court has jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332. Plaintiff is a Kansas corporation with its principal place of business in Wichita, Kansas. (Doc. 1, Compl. ¶ 1). Defendant is a Delaware limited liability company, (LLC) and none of the members of the LLC are citizens of Kansas. (Id. ¶¶ 4-6). Additionally, the amount in controversy exceeds $75,000. Because complete diversity of citizenship exists among the parties and the amount in controversy exceeds $75,000, the court has jurisdiction over this case. See 28

U.S.C. § 1332 ("district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states[.]")   As a federal court sitting in diversity, the court must apply state substantive law. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)). In this case, the relevant state is Pennsylvania.

**Legal Standard**

Defendant filed its motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion. All well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether, "'under any reasonable reading of the pleadings, the plaintiff may be entitled to relief.'" Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988) (quoting Estate of Bailey by Oare v. Cnty. of York, 768 F.2d 503, 506 (3d Cir. 1985)). The plaintiff must describe "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' [each] necessary element" of the claims alleged in the complaint. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Moreover, the

plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation." Id. at 234-35. In evaluating the sufficiency of a complaint the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted). The court does not have to accept legal conclusions or unwarranted factual inferences. See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

The federal rules require only that plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief," a standard which "does not require detailed factual allegations," but a plaintiff must make "a showing, rather than a blanket assertion, of entitlement to relief that rises above the speculative level." McTernan v. N.Y.C., 564 F.3d 636, 646 (3d Cir. 2009) (citations and internal quotations and quotation marks omitted). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). Such "facial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S.

5

at 556). "[T]he factual detail in a complaint [cannot be] so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." Phillips, 515 F.3d at 232 (citation omitted). "Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (quoting Twombly, 550 U.S. at 555).

The Supreme Court has counseled that a court examining a motion to dismiss should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. Next, the court should make a context-specific inquiry into the "factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." Id. at 681.

**Discussion**

Defendant raises the following three issues:

1) Has plaintiff alleged sufficient facts to support its contention that successor liability can be imposed on defendant?

2) Has plaintiff alleged sufficient facts to demonstrate that defendant is a party to the agreement between plaintiff and DBI to support the breach of contract claim?

6

3) Has plaintiff alleged sufficient facts to demonstrate what benefit, if any, was conferred on defendant or that the retention of such benefit was unjust?

The court will first address the successor liability claim. If plaintiff has sufficiently pled successor liability then it has sufficiently pled breach of contract and unjust enrichment claims against defendant as a matter of law.

### I. Successor Liability

The foundational issue in this case is whether defendant is a successor of DBI such that defendant can be made to answer under the law for DBI's debt to plaintiff.

DBI discontinued its operations and purportedly wound down its business affairs in October 2021. (Doc. 1, Compl. ¶ 30). Subsequently, DBI's primary lender, PNC Bank, sold DBI's assets to defendant. (Id. ¶ 34). "[I]mmediately following the day [DBI] allegedly stopped operations . . . [defendant] picked-up operations without *any* interruption." (Id. ¶ 38) (emphasis in original). Plaintiff asserts that defendant is the current iteration of DBI, in part, "because it continues to operate in effectively the same manner as the pre-October 2021 business." (Id. ¶ 33).

Generally, under Pennsylvania law, "when one company sells or transfers all of its assets to another company, the purchasing or receiving company is not responsible for the debts and liabilities of the selling company simply because it

7


acquired the seller's property." Continental Ins. Co. v. Schneider, Inc., 810 A.2d 127, 131 (Pa. Super. Ct. 2002) (internal quotation marks and citation omitted).

> In order to hold the acquiring, or successor, company responsible for the seller's liabilities one of the following must be established: 1) the purchaser expressly or impliedly agreed to assume the obligations; 2) the transaction amounted to a consolidation or merger; 3) the purchasing corporation was merely a continuation of the selling corporation; 4) the transaction was fraudulently entered into to escape liability; and 5) the transfer was without adequate consideration and no provisions were made for creditors of the selling corporation.

Id. (quoting Hill v. Trailmobile, Inc., 603 A.2d 602, 605 (Pa. Super. Ct. 1992).

Defendant argues that the plaintiff's complaint fails to allege sufficient facts to meet any of these five tests, and therefore, the complaint should be dismissed. Plaintiff alleges that the complaint sufficiently pleads facts to establish three of these tests: the transaction amounted to a consolidation or merger; the purchasing corporation was merely a continuation of the selling corporation; and the transaction was fraudulently entered into to escape liability. The court will address each of these three tests to determine if the complaint's allegations are sufficient to establish any of them.

### 1. Consolidation or Merger/Mere Continuation

The first two tests, whether the transaction amounted to a consolidation or merger and whether the purchasing corporation was merely a continuation of the selling corporation, are treated identically. Berg Chilling Sys., Inc. v. Hull Corp.,

435 F.3d 455, 464 (3d Cir. 2006). To determine if a transaction is a *de facto* merger or a mere continuation, courts examine the following factors:

1) a "continuity of management, personnel, physical location, and general business operations." Id. at 468;

2) continuity of shareholders;

3) the seller corporation as soon as legally and practically possible ceases its ordinary business operations, liquidates and dissolves; and

4) "The purchasing corporation assumes those obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation." Id. at 468-69.

Defendant argues that the plaintiff has not, and cannot, allege any "continuity of ownership" between DBI and defendant. Per defendant, this factor is met when the purchasing corporation paid for the assets of the selling corporation with shares of its own stock such that the selling corporation's shareholders become a constituent part of the buying corporation as a result of the transaction. Here, defendant argues that plaintiff has not alleged that DBI's shareholders received any consideration or interest in defendant or any property, obligations, or rights when defendant purchased DBI's assets from PNC. Thus, no *de facto* merger or continuation occurred, according to the defendant. In

9

support of its position, defendant cites to Fizzano Bros. Concrete Prods., Inc. v. XLN, Inc., 42 A.3d 951 (Pa. 2012).

In Fizzano, however, the Pennsylvania Supreme Court did not set forth such a high standard. The instant case, as noted above, deals with a breach of contract. Fizzano held: "[I]n cases rooted in breach of contract and express warranty, the *de facto* merger exception requires some sort of proof of continuity of ownership or stockholder interest. However, such proof is not restricted to mere evidence of an exchange of assets from one corporation for shares in a successor corporation. Evidence of other forms of stockholder interest in the successor corporation may suffice[.]" Fizzano, 42 A.3d at 969 (internal quotation marks and citation omitted); see also Lehman Bros. Hold. Inc. v. Gateway Fund. Div. Mortg. Servs., L.P., 942 F. Supp. 2d 516, 527 (E.D. Pa. 2013) ("owners of the predecessor corporation do *not* have to exchange their shares of the predecessor company for shares of the successor corporation; the successor can pay them with cash, property, or other rights instead."(emphasis in original)).

The Fizzano court further noted that "*de facto* merger, including its continuity of ownership prong, will always be subject to the fact-specific nature of the particular underlying corporate realities and will not always be evident from the formalities of the proximal corporate transaction." Id.

After a careful review, and considering that this case is at the motion to dismiss stage, the court finds that the plaintiff has pled sufficient allegations to find continuity of ownership and consideration received by DBI. The complaint alleges that the DeAngelo family originally founded and owned DBI. (Doc. 1, ¶ 25). "[W]ithout a break in operations, [defendant] is servicing the same customers, providing the same services, through the same employees and equipment, from the same headquarters as [DBI] had for decades. Key executives, including Paul DeAngelo and Joseph Ferguson, maintained management roles throughout the entire process." (Id. ¶ 45). Joseph Ferguson served as an executive and general counsel to DBI and continued to occupy that role with defendant. (Id. ¶ 44(i)). According to the complaint, Paul DeAngelo founded DBI and now leads Defendant, DeAngelo Contracting, LLC. (Id. ¶ 44(j)).

In 2016, the DeAngelo family obtained additional financial backing for DBI from one or more private equity firms. This financial backing provided expansion opportunity, while operations remained largely business as usual. (Id. ¶¶ 27-29). Throughout this period, the DeAngelo family and other key players remained intimately involved in the management of DBI. (Id. ¶ 28). In changing from DBI to defendant, DBI "*continued without interruption with the same key players, the*

*same customers, the same equipment, the same employes, and with a business as usual approach.*" (Id. ¶ 32) (emphasis in original).

At this early stage of the proceedings, with no discovery having been done, the court finds that these allegations are sufficient with regard to the element of continuity of management, personnel, physical location, and general business operations. As this is a very factual issue, Fizzano, 42 A.3d at 969, discovery may not support plaintiff's position or may indeed strengthen plaintiff's position.

### 2. Fraudulent Transaction to Escape Liability

Plaintiff also alleges that defendant may be held liable for DBI's liabilities because the sale of DBI's assets to defendant was fraudulently entered into to escape liability. See Continental Ins. Co. v. Schneider, Inc., 810 A.2d at 131. Defendant moves for dismissal of the fraud allegations as it was not pled with particularity.

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). Rule 9(b) "imposes a heightened pleading requirement of factual particularity with respect to all allegations for fraud" which is different from the standard needed to survive a Rule 12(b)(6) motion generally. In re Rockefeller Ctr. Props., Inc. v. Sec. Litig., 311 F.3d 198, 216 (3d Cir. 2002).

> Although Rule 9(b) falls short of requiring every material detail of the fraud such as date, location, and time, plaintiffs must use alternative

> means of injecting precision and some measure of substantiation into their allegations of fraud. The imposition of a heightened pleading requirement in fraud actions serves important objectives: Rule 9(b)'s heightened pleading standard gives defendants notice of the claims against them, provides an increased measure of protection for their reputations, and reduces the number of frivolous suits brought solely to extract settlements.

Id. (internal quotation marks and citations omitted).

Defendant alleges that plaintiff's complaint does not meet the heightened pleading standard of Rule 9(b) because the allegations are "sweeping, conclusory allegations," baseless assumptions, and generalized imprecise references to the "DeAngelo Family." (Doc. 14, Def.'s Reply Br. at 7). The court disagrees. The complaint makes detailed allegations about the steps that defendant took to acquire DBI's assets, but not its liability, while ensuring that business operations continued uninterrupted as the business changed from DBI to defendant. (See Doc. 1, Compl. ¶¶ 31-45).

For example, plaintiff alleges that defendant began full assumption of DBI in a piecemeal fashion commencing with the road marking and residential lawn care business of DBI in Spring of 2020. It was done in a piecemeal manner to distract, confuse, and escape DBI's creditors. (Id. ¶ 36). Defendant took many actions to provide a seamless transfer over from DBI to itself including, placing a letter of intent of taking over operations of DBI within days of DBI's alleged closure. (Id. ¶¶ 36-40). Defendant entered into an interim agreement providing it

13

free access to DBI's "equipment, employees, materials, information technology systems, facilities, licenses, and anything else necessary to continue the seamless operation of" DBI. (Id. ¶ 40). The interim agreement allowed defendant to operate DBI freely while legal documents meant to throw creditors off the scent were finalized. (Id. ¶ 41). Defendant obtained unencumbered access to all it needed to continue the operations of DBI without change, interruption or third-party inquiry including, *inter alia*, individual assets such as off-road vehicles, boats, backhoes, and other vehicles, assignment of customer contracts; inventory; access to and the assets contained in over seventy (70) facilities and intellectual property. (Id. ¶ 42).

These allegations of fraud are sufficiently particularized to provide defendant notice of the precise misconduct with which it is charged. See Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984), cert. denied, 469 U.S. 1211 (1985) (finding that a complaint which incorporated a list of specific pieces of machinery subject to the alleged fraud and setting forth the alleged nature of the misrepresentations satisfied the requirement that fraud be pled with particularity).

Thus, plaintiff has sufficiently pled multiple ways to establish that defendant is the successor to DBI such that it may be held liable to plaintiff for DBI's liabilities.

## Conclusion

Plaintiff has made sufficient allegations, which if proven, could lead to successor liability on the part of defendant, and thus defendant could be liable under the breach of contract and unjust enrichment claims in plaintiff's complaint. Accordingly, defendant's motion to dismiss will be denied. An appropriate order follows.

Date: 7/15/24

JUDGE JULIA K. MUNLEY
United States District Court